UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN MARK PICART, CDCR #G-67811, Plaintiff, vs. J. HILL, Warden, et al. Defendants. | Case No.: 26-cv-05813-AJB-LR **ORDER: 1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS, and 2) DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM** |

Plaintiff Stephen Mark Picart, a state prisoner proceeding *pro se*, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, accompanied by a Motion to Proceed *In Forma Pauperis* ("IFP"). (Doc. Nos. 1–2.)

## I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405, consisting of a $350 statutory fee plus an additional administrative fee of $55, although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee

Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). A prisoner seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has insufficient assets. *See* 28 U.S.C. § 1915(b)(1) & (4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(1) & (2); *Bruce*, 577 U.S. at 84.

In support of his IFP motion, Plaintiff has submitted a copy of his inmate trust account statement attested to by a trust account official. (Doc. No. 3 at 3.) The document shows he had an average monthly balance of $80.08 and average monthly deposits of $17.14, with an available balance of $10.00. (*Id.*) The Court **GRANTS** Plaintiff's motion to proceed IFP and assesses an initial partial filing fee of $16.01. However, *this initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed*. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on "failure to pay . . . due to the lack of funds available to him when payment is ordered.") Pursuant to 28 U.S.C. § 1915(b)(2), the agency having custody of Plaintiff will forward payments to the Clerk pursuant to the installment provisions of 28 U.S.C. § 1915(b)(1) & (2) until the $350 statutory fee is paid in full.

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*) (28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B. Allegations in the Complaint

Plaintiff alleges that on October 15, 2025, while housed at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, he was walking to the 10:00 p.m. pill line when he was stopped by several correctional officers. (Doc. No. 1 at 8.) Defendant correctional officer Gonzalez ordered Plaintiff to turn around and cuff up, and he complied with the order. (*Id.*) As Gonzalez placed Plaintiff's right hand in a handcuff, Defendant correctional officer Alderete grabbed Plaintiff's left arm. (*Id.*) "This is when Plaintiff lost

his foot balance." (*Id.*) Plaintiff states that his hands were cuffed behind his back at the time in violation of a medical condition which required waist restraints. (*Id.*) When Plaintiff grabbed for his walker to avoid falling, a correctional officer shouted: "Stop resisting." (*Id.*) "This is when Plaintiff was slammed against the concrete ground head first," causing "cut, bleeding, swollen, abrasion and pain" to the right side of his face. (*Id.* at 9.) Plaintiff was taken to the triage and treatment area where he waited five to eight minutes to be seen, and when the nurse asked what happened, Defendant correctional officer Eugenio falsely replied Plaintiff "tripped and fell." (*Id.* at 16.) Plaintiff "developed a migraine headache that lasted till the next day and now the migraine headache is persistent [and] more pain was inflicted upon Plaintiff when he had to have his skin glued together by the nurse in order to stop the bleeding." (*Id.*)

After being treated for his injury, he was transported to the Administrative Segregation Unit ("AdSeg") pending an investigation, where he suffered a "high level of depression and anxiety causing him to over-think, worrying, suicidal thoughts." (*Id.* at 9, 14.) That same night Plaintiff was issued a Rules Violation Report ("RVR") charging him with assault on a peace officer, but the next day the charge was reduced to resisting an officer. (*Id.* at 15.) A hearing on the RVR was held on November 20, 2025, where Plaintiff was found guilty of disobeying a direct order. (*Id.*)

Plaintiff alleges that Defendant RJD Acting Warden Hill is responsible for the recruitment, retention, training, supervision and oversight of the other Defendants, and that Eugenio has supervisory liability for the acts of Gonzalez and Alderete. (*Id.* at 2.) Plaintiff claims violations of his right to be free from cruel and unusual punishment, due process, gross negligence and assault and battery. (*Id.* at 3–5.)

**C. Discussion**

1. *Eighth Amendment Cruel and Unusual Punishment Claim*

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to" his constitutional rights. *Id.* (quoting *Wilson*, 501 U.S. at 302–03). Allegations of negligence or even gross negligence do not rise to the level of an Eighth Amendment violation. *Id.* at 835

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). *De minimis* uses of physical force do not violate the constitution provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff alleges he lost his balance while his hands were handcuffed behind his back, that when he grabbed for his walker to avoid falling a correctional officer shouted: "Stop resisting," and "[t]his is when Plaintiff was slammed against the concrete ground head first," causing "cut, bleeding, swollen, abrasion and pain" to the right side of his face. (Doc. No. 1 at 9.) He "developed a migraine headache that lasted till the next day and now the migraine headache is persistent [and] more pain was inflicted upon Plaintiff when he had to have his skin glued together by the nurse in order to stop the bleeding." (*Id*. at 16.)

In addition to failing to identify who slammed his face to the ground, Plaintiff fails to allege that his face was slammed to the ground purposely rather than inadvertently as a result of losing his balance. Also, the injury suffered is among the factors that may determine "whether the use of force could plausibly have been thought necessary" in the situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321; *see also Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("Not every malevolent touch by a prison guard gives rise to a federal cause of action," and "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.") (quoting *Hudson*, 503 U.S. at 9); *see also Graham v. Connor*, 490 U.S. 386,

396 (1989) ("Not every push or shove . . . violates the [federal Constitution]."). Plaintiff's description of his injuries, a cut and swelling to the side of his face; a headache; and mental distress, does not as described plausibly allege an injury supporting a finding that the use of force could not plausibly have been thought necessary, but instead evinced wantonness. *Whitley*, 475 U.S. at 321. Plaintiff has failed to plausibly allege any Defendant used force maliciously or sadistically rather than in a good faith effort to restrain him, or that it was the sort of force "repugnant to the conscience of mankind." *Id*. at 327; *Hudson*, 503 U.S. at 6–7; *Estelle*, 429 U.S. at 106.

Plaintiff's Eighth Amendment cruel and unusual punishment claim is dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

2. *Due Process Claim*

Plaintiff alleges his right to due process was violated. (Doc. No. 1 at 2.) He states that he was issued an RVR charging him with assault on a peace officer, which was reduced to resisting an officer, and that he was eventually found guilty of disobeying a direct order. (*Id*. at 15.) He argued at the disciplinary hearing that he could not be found guilty of resisting an officer because he merely lost his balance, and claims here that he should not have been found guilty of something with which he was never charged. (*Id*.)

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

A prisoner is entitled to due process protections during a disciplinary hearing where protected liberty interests are at stake. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003). To show that a disciplinary hearing implicates a protected liberty interest, a prisoner

must show that his sentence was exceeded in “an unexpected manner” or that the disciplinary proceedings resulted in “atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.” *Sandin*, 515 U.S. at 484. If no such liberty interest is implicated, a prisoner is granted minimum due process, which requires only that the outcome be “supported by some evidence in the record.” *Superintendent v. Hill*, 472 U.S. 445, 454–55 (1985). If a protected liberty interest arises, due process requires written notice of the charges and evidence relied on and the reasons for the action taken, an opportunity “to call witnesses and present documentary evidence in his defense” when doing so “will not be unduly hazardous to institutional safety or correctional goals,” assistance at the hearing if he is illiterate or the matter is complex, and an impartial factfinder. *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974).

Plaintiff’s allegation that he suffered a “high level of depression and anxiety causing him to over-think, worrying, suicidal thoughts” during the unspecified length of his stay in AdSeg (*see* Doc. No. 1 at 9, 14), does not plausibly allege an “atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.” *Sandin*, 515 U.S. at 480 (“The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed.”); *Serrano*, 345 F.3d at 1078 (“[A]dministrative segregation in and of itself does not implicate a protected liberty interest.”) (citing *Sandin*, 515 U.S. at 486); *see also Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (“After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is . . . the nature of those conditions themselves ‘in relation to the ordinary incidents of prison life.’”) (quoting *Sandin*, 515 U.S. at 484). The absence of allegations in the Complaint regarding the conditions in Ad-Seg fails to plausibly allege a protected liberty interest sufficient to state a due process claim. *Id*. In the absence of a liberty interest, the allegations that Plaintiff was charged with resisting an officer but found guilty of disobeying a direct order does not state a due process claim as he does not allege the charge was not “supported by some evidence in the record” sufficient to satisfy due process. *Hill*, 472 U.S. at 454–55.

Even if a liberty interest arose, there are no allegations in the Complaint that Plaintiff was deprived of any procedural protections. *See Iqbal*, 556 U.S. at 678 (noting that a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

Plaintiff's Fourteenth Amendment due process claim is dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

3. *Supervisor Liability*

Plaintiff seeks to hold Eugenio liable in a supervisory capacity for the acts of Gonzalez and Alderete, and claims Warden Hill is responsible for the recruitment, retention, training, supervision and oversight of the other Defendants. (Doc. No. 1 at 2.) "[A] plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 556 U.S. at 676–77 (rejecting argument that "a supervisor's mere knowledge of his subordinate's [unconstitutional actions] amounts to the supervisor's violating the Constitution."). "A supervisory official may be held liable under § 1983 only if 'there exists either (1) his or her personal involvement in the constitutional violation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (quoting *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011)). "In a section 1983 claim, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (internal quote marks omitted). Because Plaintiff has not plausibly alleged a constitutional violation, he has not plausibly alleged Hill or Eugenio participated in or directed a constitutional violation or knew of and failed to prevent a constitutional violation. *Id*. Plaintiff's supervisor liability claims are dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

4. *State Law Claims*

Although unclear, it appears Plaintiff seeks to present state law claims alleging gross negligence and assault and battery. (*See* Doc. No. 1 at 4–5.) The Court may "decline to exercise supplemental jurisdiction" over any supplemental state law claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *Sanford v. Member Works, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). Because all federal claims have been dismissed from this action, the Court declines to exercise supplemental jurisdiction over any state law claims at this time.

**D. Leave to Amend**

Because Plaintiff is proceeding *pro se*, the Court will grant an opportunity to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

**III. Conclusion and Orders**

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP (Doc. No. 2).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $16.01 initial filing fee as well as the remaining $333.99 balance of the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed.

/ / /

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1) and **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in the Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: November 16, 2026

Hon. Anthony J. Battaglia
United States District Judge